# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JAMES C. BAKER, individually, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> HARTFORD UNDERWRITERS ) <br> INSURANCE COMPANY, individually; ) <br> DOES I through X; and ROE ) <br> CORPORATIONS I through X, inclusive, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:14-cv-00197-GMN-NJK <br><br> **ORDER** |

Pending before the Court is the Partial Motion to Dismiss (ECF No. 15) filed by Defendant Hartford Underwriters Insurance Company ("Hartford") on March 13, 2014. Plaintiff James C. Baker ("Plaintiff") filed his Response (ECF No. 17) on March 27, 2014, and Hartford filed its Reply (ECF No. 18) on April 7, 2014.

Also pending before the Court is the Motion for Summary Judgment (ECF No. 19) filed by Hartford on April 14, 2014. Plaintiff filed his Response (ECF No. 28) on May 7, 2014, and Hartford filed its Reply (ECF No. 30) on May 27, 2014.

For the reasons discussed below, the Court **GRANTS** Hartford's Motion for Summary Judgment (ECF No. 19) and **DENIES as moot** Hartford's Partial Motion to Dismiss (ECF No. 15).

**I.     BACKGROUND**

According to the Amended Complaint, on November 27, 2007, Plaintiff was involved in a motor vehicle collision later determined to be the result of the negligence of a non-party tortfeasor. (Am. Compl. ¶ 7, ECF No. 11). At the time of the accident, Plaintiff's vehicle was insured through a policy with Hartford under which Hartford agreed to provide $1,000,000 per

accident in underinsured motorist ("UIM") policy benefits. (*Id.* at ¶ 6). On October 21, 2008, the insurer of the non-party tortfeasor tendered to Plaintiff the full amount of its $15,000 policy limits. (*Id.* at ¶ 12). Plaintiff, however, alleges that this payment was insufficient to compensate him for all of his damages, and on July 9, 2010, Plaintiff reported a UIM claim with Hartford. (*Id.* at ¶¶ 10, 14).

On September 22, 2010, Plaintiff provided Hartford with authorization to obtain Plaintiff's medical records in order to evaluate his claim. (Resp. to MSJ 3:25-4:2, ECF No. 28; Medical Authorization Cover Letter, ECF No. 28-5). Subsequently, on November, 17, 2010, Hartford offered $110,000 to settle Plaintiff's UIM claim. (Settlement Offer, ECF No. 28-6). On January 25, 2011, following several rounds of correspondence regarding the details of the settlement offer during which Plaintiff provided Hartford with new medical records showing additional expenses, Hartford increased its settlement offer to $166,000. (Resp. to MSJ 4:7-5:5, ECF No. 28; Settlement Correspondence, ECF Nos. 28-7–28-11).

In late January or early February of 2011, however, Plaintiff informed Hartford for the first time that he was also seeking a wage loss claim under the policy, (MSJ 3:7-9, ECF No. 19; Resp. to MSJ 5:7-12, ECF No. 28), so on March 1, 2011, Hartford sent a letter to Plaintiff's counsel seeking information substantiating this claim, (March 1, 2011 Letter, ECF No. 19-4). Hartford subsequently submitted five additional requests for information substantiating Plaintiff's wage loss claim between April 19, 2011 and December 30, 2011. (Information Requests, ECF No. 19-5). Finally, on February 3, 2012, over eleven months after Hartford's initial request, Plaintiff finally responded to the numerous requests for information by providing Hartford with a one-page letter from the treasurer of Nationwide Power ("NP"), explaining that Plaintiff was the sole Sales Consultant for NP between 2001 and 2009 and that NP had to hire two full-time sales associates to replace him. (Wage Loss Letter, ECF Nos. 19-6 and 28-12). The letter then lists the pay for four different employees hired between 2009 and

2011 to fill these two positions, with a combined total wage of $469,570.96.[1] (*Id.*).

On February 7, 2012, Hartford sent a letter to Plaintiff's counsel requesting clarification regarding the information about NP's hiring of new sales associates and how this information relates to Plaintiff's wage loss claim. (February 7, 2012 Letter, ECF No. 19-7).  In the letter, Hartford also requested disclosure of Plaintiff's tax returns for the years 2007 through 2011 in order to better evaluate his claim. (*Id.*).  After speaking with Plaintiff's counsel regarding the information in the letter from NP's treasurer and the possibility of mediation, on April 3, 2012, Hartford again requested disclosure of the tax returns and indicated that an examination of Plaintiff under oath may be beneficial to further evaluate Plaintiff's wage loss claim. (April 3, 2012 Letter, ECF No. 19-8).  On May 9, 2012, three months after Hartford's first request, Plaintiff provided Hartford with executed tax authorization forms. (Tax Authorization Forms, ECF Nos. 19-8, 19-9, and 28-14).  Hartford then forward the forms to the IRS and, on May 24, 2012, eventually obtained the requested tax summaries for the years 2008 through 2011 but was unable to obtain the tax summary for 2007. (Tax Summaries, ECF No. 19-10).

Following a review of the tax returns—which indicated that Plaintiff received wages in the amount of $186,000, $160,000, $49,258, and $50,044 for the years 2008, 2009, 2010 and 2011, respectively—Hartford determined that it could not substantiate Plaintiff's wage loss claim and, on June 27, 2012, requested to examine Plaintiff under oath.  (*Id.*; June 27, 2012 Letter, ECF No. 28-15).  Plaintiff complied with the request and on October 2, 2012, participated in an examination. (EUO Transcript, ECF Nos. 19-12 and 28-16).

During the examination, Plaintiff indicated that his claim arose from his inability to

---

[1] The letter from NP's treasurer also notes that Plaintiff is the 100% owner of NP. (Wage Loss Letter, ECF Nos. 19-6 and 28-12).  This fact, along with the fact that Plaintiff is apparently seeking to recover for the wages NP has allegedly had to pay to other employees in Plaintiff's absence, indicates that rather than a wage loss claim, Plaintiff is actually seeking a claim for lost profits from his ownership of NP that resulted from his injuries.  As will be shown later, this inaccurate titling of Plaintiff's claim led to confusion between the parties regarding how to substantiate the claim. *See infra* 3:3-4:23.

perform his job starting in 2009 due to his injuries from the 2007 accident, which lead to the need to hire sales associates to replace him. (EUO Transcript 117:11-118:24; 128:12-129:3, ECF Nos. 19-12 and 28-16).  However, he explicitly denies that his claim is limited to the salaries of the new employees, (*Id.* 129:20-23), and repeatedly indicates that the only way to quantify his claim would be to look at NP's books and talk to its financial officers, (*Id.* 118:25-119:9; 122:19-124:23; 128:2-16).

Plaintiff also provided a copy of his 2007 tax returns indicating that his wages for that year were $179,000. (2007 Tax Return, ECF No. 19-13).  When questioned about how he could have a wage loss claim when his wages the year after the accident went up from $179,000 to $186,000 and his total income for those two years went from $1.2 million in 2007 to $2.1 million in 2008, Plaintiff responded by saying, "I don't know.  I don't know that I had a salary, so … I'd have to talk to an accountant on it. … I don't know any of this stuff." (EUO Transcript 145:23-147:3, ECF Nos. 19-12 and 28-16).  When pressed further by Hartford's counsel about how to substantiate his wage loss claim, Plaintiff responded, "I need an accountant sitting here because I didn't make millions of dollars. … I didn't take home millions of dollars.  I know that.  One year I think I did." (*Id.* 147:4-19).  In reply to these answers, Hartford's counsel stated,

> All I have is a tax return from the year 2008, and that shows reported income of about a million dollars more than the year before.  So on the face of these documents, I don't see a wage loss, but I need to look someplace else to determine what the wage loss was for 2008.  Is that what you're telling me?

(*Id.* 148:2-8).  Plaintiff responded, "Without my accountant sitting here, there is no way I'm going to be able to tell you what's what." (*Id.* 148:13-15).

Following Plaintiff's inability to provide Hartford with information substantiating his wage loss claim during the EUO, on November 21, 2012, Hartford requested permission to have a forensic account examine NP's financial records in order to quantify and evaluate

Plaintiff's claim. (November 21, 2012 Letter, ECF Nos. 19-14 and 28-17).  On December 12, 2012, Hartford again requested permission to have an accountant examine NP's books. (December 12, 2012 Letter, ECF No. 19-16).  While still awaiting permission to examine NP's books, Hartford participated in a mediation with Plaintiff on April 29, 2013. (Settlement Letter, ECF Nos. 19-17 and 28-20).  Subsequently, on May 22, 2013, Hartford tendered $166,000 to Plaintiff to settle all of Plaintiff's claims other than his wage loss, and indicated that if Plaintiff wished to continue pursuing his wage loss claim, then Hartford would need to examine a NP accountant under oath and examine NP's financial documents. (*Id.*).  Hartford reiterated its request to examine NP's books on June 24, 2013. (June 24, 2013 Letter, ECF No. 19-18).

Rather than provide Hartford with the requested access to NP's financial records, however, Plaintiff initiated the present lawsuit on November 26, 2013, asserting claims based on Hartford's failure to pay his wage loss claim. (Original Compl., ECF No. 1-1).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

In its Motion for Summary Judgment, Hartford asserts that Plaintiff is precluded from bringing his underinsured motorist claims in this lawsuit because Plaintiff failed to comply with the cooperation clause in the policy and assist Hartford in investigating his claims for wage loss. (MSJ 1:23-2:21, ECF No. 19). The Hartford's insurance policy, contains a provision that states:

> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
> . . .
> b. Additionally, you . . . must:
> . . .
> (3) Cooperate with us in the investigation or settlement of the claim . . . .
> (4) Authorize us to obtain medical records or other pertinent information.

(Insurance Policy § IV.A.2, ECF No. 19-1). Additionally, the policy further states that "[n]o one may bring a legal action against [Hartford] under this Coverage Form until . . . [t]here has been full compliance with all the terms of this Coverage Form. . . ." (*Id.* at § IV.A.3(a)).

"When an insurance policy explicitly makes compliance with a term in the policy a condition precedent to coverage, the insured bears the burden of establishing compliance with that term." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 962 (Nev. 2011) (citing *Ins. Co. v. Cassinelli*, 216 P.2d 606, 615 (Nev. 1950); *Lucini-Parish Ins. v. Buck*, 836 P.2d 627, 629 (Nev. 1992)). Furthermore, provisions in insurance policies requiring insureds to cooperate with the insurer's investigation and precluding an insured from bringing legal action

until the insured has complied with their obligations are valid under Nevada law. *See Holland v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712, at *5 (D. Nev. Mar. 27, 2014) (citing *Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 714 P.2d 562, 562–63 (Nev. 1986)); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 2:07-cv-00060-KJD-LRL, 2009 WL 2197370, at *7 (D. Nev. July 23, 2009) (citing *State Farm Mut. Auto. Ins. Co. v. Casinelli*, 216 P.2d 606 (Nev. 1950)).  Accordingly, when an insurance policy contains such provisions and the insured fails to comply with the condition precedent to coverage requiring cooperation with the insurer's investigation, that failure precludes the insured from bringing a legal action under the policy. *See, e.g.*, *Holland*, 2014 WL 1268712, at *5 ("The fact that Holland initiated this lawsuit against State Farm before complying with the cooperation provisions bars this lawsuit . . . ."); *Keys v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-1181-JCM-PAL, 2013 WL 3198397, at *4 (D. Nev. June 21, 2013) ("Plaintiff never cooperated with defendant and therefore never complied with the clear terms of the policy and is precluded from bringing the instant action."); *Schwartz*, 2009 WL 2197370, at *7 ("Plaintiff's unjustified refusal to submit to the reasonable request for an IME, coupled by an immediate filing of a lawsuit, therefore, precludes her from recovering under the policy.").

In its motion, Hartford argues that it had no duty to provide UIM benefits based upon Plaintiff's wage loss claim unless Plaintiff cooperated in providing access to the necessary information to investigate that claim, namely access to NP's books or the ability to examine under oath one of NP's financial officers. (MSJ 8:7-11:7, ECF No. 19).  Therefore, because Plaintiff did not provide access to this information, he did not comply with a condition precedent of the policy and was precluded from filing the present lawsuit. (*Id.*).  In his Response, Plaintiff contends that the policy provisions relied on by Hartford are vague and that he did cooperate within the meaning of those provisions by providing authorization for medical records and tax returns and by undergoing an EUO. (Resp. 8:20-9:14; 10:3-9, ECF No. 28).

Plaintiff further contends that he was forced to file his lawsuit when he did because of fear that the statute of limitations on his claim was about to run. (*Id.* 17:19-18:6).

Plaintiff's assertions, however, are unavailing. First, the provisions relied upon by Hartford are not vague, and under their plain meaning, Plaintiff did not comply with a condition precedent in the policy. The policy clearly provides that in order for Hartford to have a duty to provide coverage under the policy, Plaintiff "must . . . [c]ooperate with [Hartford] in the investigation or settlement of the claim [and a]uthorize [Hartford] to obtain medical records or other pertinent information." (Insurance Policy § IV.A.2, ECF No. 19-1). Accordingly, a condition precedent to Plaintiff recovering under the policy was Plaintiff's cooperation in the investigation of his wage loss claim, which included providing authorization to "pertinent information" regarding that claim. Though "pertinent information" is a broad term, as Plaintiff himself made clear multiple times in his EUO, the only way Hartford could have properly evaluated his claim would be to examine NP's financial records or speak to an NP accountant regarding those records. (EUO Transcript 118:25-119:9; 122:19-124:23; 128:2-16; 145:23-148:15, ECF Nos. 19-12 and 28-16). Therefore, by Plaintiff's own admission, NP's financial records were not just pertinent to Plaintiff's claim, but they appear to be the only pertinent information to his claim.

Plaintiff's provision of authorization to obtain medical records and tax returns and his participation in the EUO provided little if any information regarding his UIM claim based on NP's lost profits. The only information Plaintiff seems to have provided to Hartford substantiating his claim was the one-page letter from NP's treasurer listing the salaries of the sales associates hired to replace Plaintiff. (Wage Loss Letter, ECF Nos. 19-6 and 28-12). However, even accepted at face value, this letter alone could not have provided Hartford with enough information to evaluate Plaintiff's claim because it would not have shown the effect hiring the new employees had on NP's profits. For example, if NP's revenue increased

following the hiring of these associates by more than their salary, then there would be no lost profits based on their hiring. Accordingly, Plaintiff did not cooperate with Hartford's investigation or provide it with authorization to obtain the pertinent information regarding his wage loss claim. Therefore, he failed to comply with a condition precedent to receive benefits under the policy for his wage loss claim.

Second, Plaintiff's assertion that the statute of limitations somehow compelled him to file the present suit is equally unpersuasive. In Nevada, the statute of limitations for UIM claims runs six years after the insurer denies the claim. *State Farm Mut. Auto. Ins. Co. v. Fitts*, 99 P.3d 1160, 1162–63 (Nev. 2004). Though the Supreme Court of Nevada has not clarified what specific actions constitute a formal denial of a claim, the facts here show that the statute of limitations period could not possibly have been near completion despite Plaintiff's assertion that had he waited any longer, Hartford "undoubtedly would have filed a Motion for Summary Judgment claiming that the applicable statute of limitations . . . had run." (Resp. 18:1-6, ECF No. 28).

Plaintiff filed his Original Complaint on November 26, 2013, one day before the sixth anniversary of the underlying accident. (Original Compl., ECF No. 1-1). Nevada case law, however, is clear that the statute of limitations does not run from the date of the underlying accident, but from the date the claim is denied. *Grayson v. State Farm Mut. Auto. Ins.*, 971 P.2d 798, 799–800 (Nev. 1998); *see also Fitts*, 99 P.3d at 1162–63. Here, Plaintiff did not even inform Hartford of his wage loss claim until early 2011. (MSJ 3:7-9, ECF No. 19; Resp. to MSJ 5:7-12, ECF No. 28). Moreover, the first moment that could potentially be construed as a denial of his wage loss claim occurred on May 22, 2013 when Hartford tendered the settlement payment for Plaintiff's other UIM claims. (Settlement Letter, ECF Nos. 19-17 and 28-20); *see Mendoza v. Met Life Auto & Home Ins. Agency, Inc.*, No. 2:09-CV-01872-RCJ, 2011 WL 467693, at *6 (D. Nev. Feb. 4, 2011) (finding a UIM claim to have been denied when the

insurer submitted a settlement offer that was unsatisfactory to the insured).  However, even after this point, Hartford sent Plaintiff a request for authorization to examine NP's books, indicating that it had still not yet denied his wage loss claim. *See* (June 24, 2013 Letter, ECF No. 19-18).  Therefore, at the time he filed his Original Complaint, Plaintiff still had at years before the statute of limitations would have run, if the limitations period had started to run at all.  Accordingly, Plaintiff's implicit plea that he should be excused from the provision of the contract precluding legal action until he had complied with the conditions precedent because of his fear that the statute of limitations would run on his claim is without merit.

The clear terms of the policy required Plaintiff to cooperate with Hartford's investigation of his wage loss claim and provide it with authorization to obtain the pertinent information regarding that claim.  By failing to provide Hartford with the only means by which Plaintiff himself acknowledged Hartford could evaluate his claim, Plaintiff failed to satisfy these conditions precedent to bringing this action.  Therefore, Plaintiff is barred from this bringing suit.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Hartford's Motion for Summary Judgment (ECF No. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Hartford's Partial Motion to Dismiss (ECF No. 15) is **DENIED as moot**.

The Clerk shall enter judgment accordingly and close the case.

**DATED** this 9th day of January, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge